IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PAUL C. NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:11-cv-00846-JO |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | OPINION AND ORDER |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.,

Plaintiff Paul Nelson appeals the Commissioner's decision denying his application for

Supplemental Security Income under Title XVI of the Social Security Act. The court has jurisdiction

under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Nelson received supplemental security income under Title XVI from the age of 8 in 1992

until the benefits were terminated in July 2002 when he was 18. Nelson filed successive applications

as a pro se claimant beginning in 2002. The Commissioner denied these at the initial and

reconsideration stages of administrative proceedings, and Nelson did not request further review.

Nelson filed his third application in December 2004, and obtained counsel while the claim was

pending. The Commissioner denied that claim in August 2005 at the reconsideration stage. Nelson did not request an administrative hearing before an ALJ.

In February 2006, Nelson filed his current application, alleging disability from ADHD, a broken arm, left knee problem, schizophrenia, and anxiety. Nelson did not request that the Commissioner reopen his previous applications. The ALJ applied the sequential disability determination process described in 20 C.F.R. § 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Nelson's ability to perform basic work activities limited by alcoholism and drug addiction, a depressive disorder, and a history of psychotic disorder, pancreatitis, and a dislocated patella. The ALJ found Nelson disabled because these impairments left him unable to sustain full time work.

An otherwise disabled claimant may not receive benefits if drug addiction or alcoholism is a contributing factor material to the determination that he is disabled. 42 U.S.C § 1382(a)(3)(J). Accordingly, the ALJ properly repeated the disability determination process to determine whether she would still find Nelson disabled if he stopped using drugs or alcohol. 20 C.F.R. §416.935. The ALJ found that, if Nelson abstained from substance abuse, he would have the residual functional capacity ("RFC") to perform work limited to simple tasks, minimal social interaction, and light exertion with restrictions on climbing and postural activities, such as stooping, kneeling, crawling and so forth. The ALJ elicited testimony from a vocational expert who said that a person with this RFC would be able to perform the requirements of light, unskilled occupations such as housekeeper and packing line worker, which represent hundreds of thousands of jobs in the national economy. The ALJ concluded that substance abuse was a contributing factor material to the determination of disability and that Nelson was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

The Social Security Act provides for judicial review of final decisions of the Commissioner of Social Security. 42 U.S.C. § 405(g). The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.    Claims of Error

Nelson contends the ALJ erred by failing to reopen his three previous applications. He also contends the ALJ improperly rejected the opinions of Donna Wicher, Ph.D. and Frank Lahman, Ph.D. He asks the court to credit the psychologists' opinions as a matter of law and award him supplemental security income back to the date of his first unsuccessful application in 2002.

### II.    Failure to Reopen Previous Claims

Nelson's most recent previous claim was denied on August 10, 2005, at the reconsideration stage. He had the right to request a hearing before an ALJ. 20 C.F.R. § 416.1407. Nelson, who was represented by counsel, did not request a hearing. Accordingly, after 60 days the adverse reconsideration determination became final and binding. 20 C.F.R. §§ 416.1421, 416.1433.

The Commissioner may reopen an otherwise final and binding determination within two years on a showing of good cause. 20 C.F.R. § 416.1488(b). Nelson did not seek to reopen or

attempt to show good cause within two years of August 10, 2005. He did not request reopening when he appeared with counsel before the ALJ on his current claim or when his attorney requested review from the Appeals Council. The Commissioner did not have notice that Nelson sought to reopen his previous claim until August 2012, seven years after the most recent previous adverse determination, when Nelson filed his Opening Brief in this case before this court. Nelson was represented by legal counsel when the previous claim was denied and throughout the administrative and court proceedings on his current claim.

Nelson argues his failure to seek reopening for good cause within two years should be excused under Social Security Ruling ("SSR") 91-5p. SSR 91-5p is a policy interpretation regarding mental incapacity as good cause for missing a deadline to seek review, including the 2-year deadline within which a final decision can be reopened under 20 C.F.R. § 416.1488(b). SSR 91-5p explains that the reopening deadline does not apply if the claimant establishes both the mental incapacity to understand the procedures for requesting reopening and that the claimant lacked legal representation at the time of the prior administrative determination. Nelson did not establish the inability to understand procedures and he had legal representation during the prior administrative determination.

Nelson argues that the Commissioner should have reopened the earlier applications *sua sponte*, even in the absence of a request by him to do so. The regulations permit the Commissioner to reopen a claim on his own initiative, but this is purely discretionary and requires a finding of good cause within two years of the previous adverse determination. 20 C.F.R. §§ 416.1487(b), 416.1488. Nelson did not attempt to show good cause, good cause is not readily apparent from the record of the case, and the Commissioner did not make a finding on the issue of good cause. Even if the Commissioner's failure to make a finding of good cause could be construed as a refusal to reopen

the previous determination, such a denial is not a final decision of the Commissioner within the meaning of 42 U.S.C. § 405(g). For this reason, the court generally does not have jurisdiction to review an ALJ's refusal to reopen a previous application. *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008); *Udd v. Massanari*, 245 F.3d 1096, 1098-99 (9th Cir. 2001) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977)).

Despite this general rule, courts have jurisdiction to consider a colorable constitutional claim that the Commissioner's refusal to reopen a previous application denied the claimant a meaningful opportunity to be heard or to seek review of the previous determination. *Klemm*, 543 F.3d at 1144-45, *Udd*, 245 F.3d at 1199; *Evans v. Chater*, 110 F.3d 1480, 1483 (9th Cir. 1997). A claimant may assert a colorable constitutional claim by alleging he could not obtain review because he suffered from a mental impairment and was not represented by counsel, unless such allegations are purely conclusory and unsupported by facts. *Klemm*, 543 F.3d at 1145; *Udd*, 245 F.3d at 1099. Nelson's argument that he has raised a colorable constitutional due process claim fails because he was represented by counsel when the prior administrative determination was made and his counsel did not request reopening or attempt to make a showing of good cause for failing to make such a request. The circumstances of this case do not support a colorable constitutional due process claim.

## II.    Psychologists' Opinions

Dr. Wicher performed a comprehensive psychodiagnostic evaluation in July 2006, to determine whether Nelson had any mental, cognitive, or emotional difficulties that would interfere with his ability to work. Nelson told Dr. Wicher he had experienced psychotic symptoms while using methamphetamine, but denied any other episodes of psychosis. His psychotic symptoms resolved after a psychiatric hospitalization, treatment with antipsychotic medications, and

participation in substance abuse treatment. He denied any other mental health treatment and denied

any significant current mental health symptoms. Dr. Wicher's mental status evaluation indicated

Nelson had modest intellectual ability, but his thought processes were intact without indications of

hallucinations or delusions. He had no apparent deficits in memory, concentration, mood, or affect.

Nelson admitted continued marijuana use, but denied other substance abuse.

Dr. Wicher diagnosed polysubstance abuse and borderline personality disorder. She noted

a reported past diagnosis of mild mental retardation, and other diagnoses in remission. Dr. Wicher

said that Nelson's limitations derived primarily from his personality structure, based on Nelson's

report of lifelong impulsivity and difficulty controlling anger. She observed that he appeared to be

somewhat immature during the evaluation.

The ALJ accepted much of Dr. Wicher's opinion and relied on her findings with respect to

the so-called B criteria to conclude that Nelson's mental impairments did not satisfy the criteria for

any of the presumptively disabling conditions in the regulatory Listing of Impairments, 20 C.F.R.

Part 404, Subpart P, Appendix 1. Specifically, Dr. Wicher found that Nelson had mild deficits in

the ability to perform activities of daily living, moderate deficits in social functioning, moderate

deficits in concentration, persistence, and pace, and no episodes of decompensation. The ALJ had

no quarrel with these findings, but found they reflected Nelson's level of functioning while using

drugs and alcohol and did not accurately describe his functioning when he abstained from substance

abuse. In doing so, the ALJ effectively discounted Dr. Wicher's opinion that Nelson's deficits were

most closely related to his personality structure and found, instead, that they were attributable to his

substance abuse and immaturity. In addition, the ALJ found Dr. Wicher's diagnosis of borderline

personality disorder unsupported by the treatment record.

An ALJ can reject an examining physician's opinion that is inconsistent with the opinions of other physicians, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ reasoned that Dr. Wicher's opinion was inconsistent with the treatment record because no treating mental health provider diagnosed borderline personality disorder. Treatment records show diagnoses of oppositional defiant disorder, psychotic disorder, schizophrenia, and major depression, but no diagnosis of borderline personality. Nevertheless, Nelson argues that Dr. Wicher's diagnosis is consistent with the treatment record because the conditions that were diagnosed have symptoms in common with borderline personality disorder. Nelson's argument is essentially that the treating sources could have diagnosed borderline personality disorder instead of or in addition to the diagnoses they reached and the court should reach that diagnostic impression, even though the treating sources did not. This argument is unpersuasive, because the court is not qualified to make diagnostic findings and not authorized to substitute its judgment for that of the ALJ on issues of fact. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40. The ALJ's conclusion that Dr. Wicher's borderline personality diagnosis is not supported by the treating sources rationally flows from the fact that no treating source diagnosed borderline personality disorder. Her reasoning is specific and legitimate and supported by substantial evidence.

Substantial evidence also supports the ALJ's determination that Dr. Wicher's opinion reflected Nelson's level of functioning while using drugs and alcohol. Nelson admitted that he continued to use marijuana at the time of Dr. Wicher's evaluation. He denied using alcohol and other drugs at this time, but the ALJ correctly found his subjective reports regarding substance abuse

inconsistent and not entirely credible.  In addition, the ALJ had the benefit of records from various medical, psychiatric, and other health care providers who treated Nelson after Dr. Wicher's evaluation.  These showed a pattern of improved functioning with abstinence from drugs and alcohol, but deteriorated functioning and noncompliance with treatment during periods of substance abuse.

Dr. Lahman did not treat or examine Nelson, but prepared a Psychiatric Review Technique form ("PRTF") and a Mental Residual Functional Capacity Assessment ("MRFC"), after reviewing the case record.  Dr. Lahman opined that Nelson "would need supportive supervision to stay on task" and "supportive, understanding supervision, but not special supervision" because he would have some problems accepting criticism from supervisors.  Admin. R. 539.

The ALJ found this opinion vague and confusing regarding the meaning of "supportive ...but not special supervision."  Admin R. 82, 539.  The ALJ believed Dr. Lahman was describing Nelson's functional capacity including the effects of drug and alcohol problems.  This is a rational inference drawn from Dr. Lahman's inclusion of substance addiction disorders on his PRTF and MRFC worksheets and the absence of any analysis in his opinion of what Nelson's limitations would be if he abstained from substance abuse.  In addition, Dr. Lahman reviewed the record in July 2006, and subsequent treatment records indicated that Nelson had improved symptoms and good compliance with treatment when he abstained from drug and alcohol use, but failed to comply with treatment and had poor functioning when he abused substances.  The ALJ rationally concluded that Nelson did not need supportive supervision and is able to sustain work when he maintains sobriety.  Even if the evidence could be interpreted differently, in a manner more favorable to Nelson, the court is not free

to overturn the ALJ's factual findings that are supported by inferences reasonably drawn from substantial evidence in the record. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

## CONCLUSION

The ALJ properly determined that Nelson is disabled, but that drug addiction and alcoholism are contributing factors material to the determination that he is disabled. Nelson is therefore not disabled within the meaning of the Social Security Act and not entitled to supplemental security income. 42 U.S.C §§ 405(g); 1382(a)(3)(J). I AFFIRM the Commissioner's final decision.

DATED this 8 day of May, 2013.

Robert E. Jones, Senior Judge
United States District Court